IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRUCE R. SPELL,                          )
                                         )
              Petitioner,                )
                                         )
       v.                                )        Civil Action No. 03-408-KAJ
                                         )
THOMAS CARROLL,                          )
Warden, and M. JANE                      )
BRADY, Attorney General                  )
of the State of                          )
Delaware,                                )
                                         )
              Respondents.               )

## MEMORANDUM OPINION

_____

Bruce R. Spell. *Pro se* Petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondent.

_____

September 28, 2005
Wilmington, Delaware



**JORDAN, District Judge**

## I.   INTRODUCTION

Petitioner Bruce R. Spell ("Spell") is a Delaware inmate in custody at the

Delaware Correctional Center in Smyrna, Delaware, having pled guilty to second

degree murder and a weapons charge in the death of Frankie Lee Myhand ("Myhand").

Currently before the Court is Spell's petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 (the "Petition").  For the reasons that follow, I will deny the Petition.  (D.I.

2.)

## II.   FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Superior Court, the facts leading to Spell's

conviction are as follows.  *See State v. Spell*, 2002 WL 316616 at *2-*3 (Del. Super. Ct.

Feb. 28, 2002).

> During September of 1995, Spell and Myhand were migrant laborers and roommates at the Cartanza Labor Camp near Little Creek, Delaware. Myhand was believed to be mildly mentally retarded.  On September 23, 1995 Spell and Myhand argued and Spell ejected him from their room.  Because it was cold that night, Spell eventually let Myhand back in.

> The next morning Myhand spoke with Anthony Newsome, the camp foreman and his cousin.  Myhand told Newsome that Spell was hiding a knife under his bed. During this conversation, Spell entered Newsome's office and assaulted Myhand.  Myhand bit Spell on the chest while defending himself and drew blood. Spell later told his attorneys that Myhand actually attacked him, but this was contrary to Newsome's description of this event.

> Spell returned to his room and treated his wound.  He learned then from a woman that Myhand was suspected of having AIDS.  Spell became alarmed at this and went to Newsome to ask him to take him to the hospital.  Newsome did so.  On the way Newsome told Spell he would move Myhand out of the room.

At the hospital the police spoke with Spell about filing a complaint against Myhand. He declined. After being treated, Spell returned to the camp and went to his room where he found the door "busted in" and Myhand inside. According to witnesses, Spell yelled at Myhand to leave and said he was going to kill him for giving him AIDS. Spell struck Myhand in the upper chest left shoulder area and then struck him a second time with what appeared to be a screwdriver. Spell was saying, "You bit me, you gave me AIDS" and stabbed Myhand in the back of the neck as he tried to flee. The eyewitnesses did not see Myhand with a weapon nor did they see him make any aggressive moves toward Spell. Spell later told his attorneys that he believed Myhand had a knife.

Myhand was bleeding profusely but managed to reach Newsome's room leaving a trail of blood behind him. As Newsome called 911, Myhand stumbled out of the room and collapsed outside where he died. According to the autopsy, Myhand had three stab wounds to his right chest, left throat and right neck. Spell has admitted he was not cut at all during this altercation.

Spell was observed by witnesses with what appeared to be a bloody screwdriver or "pot handle" in his hand. The object was never recovered. Nor was any knife recovered from the room. When the police arrived, Spell calmly walked up to them. When asked if he had stabbed Myhand he respond[ed] "yes."

Representation of Spell was referred to the Public Defender's Office. Spell was initially represented by Howard Hillis, Esq. and Lloyd Schmid, Esq. Hillis was succeeded by Richard Baumeister, Esq. in 1996. The assigned investigator was Joseph Klenoski.

The State had an open file policy in this case. Defense counsel focused on the defense of self-defense as claimed by Spell and the mitigating circumstance of extreme emotional distress. [11 Del. C. § 641]. Spell told his counsel that there were no witnesses to the stabbing. Thus, on the self-defense claim that Myhand attacked Spell with a knife, there was only Spell's testimony to support it. On the extreme emotional distress claim the defense did obtain the opinion of a psychiatrist to support that contention and there was evidence to corroborate Myhand's behavior and the bite incident. Spell had explained to his attorneys that Myhand had on numerous occasions masturbated on his food and kitchen utensils and that he was upset about getting AIDS from him. If extreme emotional distress was found by the jury, it would have reduced the offense to manslaughter. Based on Spell's record he nonetheless would have been sentenced to mandatory life imprisonment without probation or parole for manslaughter under 11 Del. C. § 4214(b).

There were two continuances of trial dates in this case. The first trial date of June 3, 1996 was continued at the request of the State because of the unavailability of witnesses. The trial was rescheduled for September 16, 1996

which was within one year of the date of arrest. This trial date was continued at the request of Mr. Schmid because Mr. Hillis suddenly left the Public Defender's Office in the late summer of 1996. The trial was rescheduled for June 27, 1997 with the concurrence of Spell. Spell ultimately decided, in consultation with his counsel, that it was in his best interest to enter into a plea agreement that avoided any risk of a death sentence and which allowed the sentencing judge the discretion to impose less than life imprisonment for the homicide. The guilty pleas were entered on June 16, 1997.

During the plea colloquy Spell testified under oath before Resident Judge Terry that he understood the nature of the charges, that he was in fact guilty of them, that not promises were made about what his actual sentence would be, and that he understood he could receive up to life imprisonment in the discretion of the Court as an habitual offender. Spell also said no one threatened or forced him to plead, that he gave true answers to all questions on the guilty plea form, that he understood each of his constitutional rights he was giving up, and that he was voluntarily entering the plea because he was guilty of Murder in the Second Degree and Possession of a Deadly Weapon During the Commission of a Felony. He acknowledge discussing the matter "fully" with his attorneys. He swore that he was satisfied that they had done all theat they reasonably could do for him.

On August 8, 1997, the Delaware Superior Court sentenced Spell as an habitual offender to life in prison. Spell did not appeal his conviction or sentence. *Spell*, 2002 WL 316616, at *1.

On November 16, 1998, Spell filed a motion in the Delaware Superior Court for state post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). His Rule 61 motion asserted five ineffective assistance of counsel claims. The Superior Court denied the motion in a memorandum opinion dated February 28, 2002. *Spell*, 2002 WL 316616. Spell appealed, and the Delaware Supreme Court affirmed the Superior Court's decision.

In April 2003, Spell filed in this Court a form § 2254 petition containing five ineffective assistance of counsel claims. (D.I. 2.)

The State asks the Court to dismiss Scott's § 2254 petition as untimely. (D.I. 9.)

3

## III.    SPELL'S PETITION IS NOT TIME-BARRED

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas petitions filed in federal courts after April 23, 1996 must comply with AEDPA's requirements. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). This time period begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Spell's  § 2254 petition, dated April 17, 2003, is subject to the limitations period contained in § 2244(d)(1).  *See Lindh*, 521 U.S. at 336.  He does not allege, nor can I discern, any facts triggering the application of §§ 2244(d)(1)(B),(C), or (D).  Accordingly, the one-year period of limitations began to run when Spell's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, when the time for seeking direct review in state court expires.  *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999).  In the instant situation, the Superior Court sentenced Spell on August 8, 1997, and he did not appeal.  As a result, Spell's conviction became final on September 8, 1997, the day on which the 30-day period for filing a timely appeal expired.[1]  *See* Del. Supr. Ct. R. 6.  Thus, in order to satisfy AEDPA's limitations period, Spell had to file his § 2254 petition by September 8, 1998.  *See, e.g., Eaton v. Carroll*, 2003 WL 471235 (D. Del. Feb. 13 2002)

A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court.  *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)(the date on which a prisoner transmitted documents to prison

---

[1]The 30-day period actually expired on September 7, 1997.  However, because September 7, 1997 was a Sunday, the limitations period is extended through Monday, September 8, 1997.  Del. Supr. Ct. R. 11(a).  The State asserts that September 14, 1998 is the day on which the 30-day appeal period expired.   I presume this date is a mathematical error, considering that it falls 37 days after the appeal period expired, and the State does not offer an explanation for the deviation from Delaware Supreme Court Rule 11(a)'s computation requirements.  Regardless, the extra 7 days would not render Spell's petition timely at this point in the analysis.

authorities is to be considered the actual filing date); *Burns v. Morton*, 134 F.3d 109,

113 (3d Cir. 1998). Spell's habeas petition is dated April 17, 2003, and the court adopts

this date as the presumptive filing date. *See Woods v. Kearney*, 215 F. Supp. 2d 458,

460 (D. Del. 2002); *Gholdson v. Snyder*, 2001 WL 657722, at *3 (D. Del. May 9, 2001).

Because he filed the § 2254 petition well past the September 8, 1998 filing deadline, it

appears that his petition is time-barred. Nevertheless, the limitations period is subject

to statutory and equitable tolling, which may render his petition timely filed. *See Jones*

*v. Morton,* 195 F.3d 153, 158 (3d Cir. 1999).

Section 2244(d)(2) of AEDPA specifically permits the statutory tolling of the one-

year period of limitations:

> The time during which a properly filed application for State post-conviction or
> other collateral review with respect to the pertinent judgment or claim is pending
> should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). A properly filed state post-conviction motion tolls AEDPA's

limitations period during the time the action is pending in the state courts, including any

post-conviction appeals. *Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). "An

application is properly filed when its delivery and acceptance are in compliance with the

applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

Procedural requirements include the "form of the document, the time limits upon its

delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.*;

*Merritt v. Blaine*, 326 F.3d 157, 162 (3d Cir. 2003). However, a properly filed state post-

conviction application can only toll the federal habeas limitations period if it is filed

before the expiration of AEDPA's one-year limitations period. *See Long v. Wilson,* 393

6

F.3d 390, 394-95 (3d Cir. 2004)("the state habeas petition had no effect on tolling [because AEDPA's] limitations period had already run when it was filed"); *Crews v. Horn*, 360 F.3d 146, 150 (3d Cir. 2004); *Price v. Taylor*, 2002 WL 31107363, at \*2 (D. Del. Sept. 23, 2002); *Gholdson v. Snyder*, 2001 WL 657722, at \*3 (D. Del. May 9, 2001).

Here, the State contends, and the Delaware Superior Court docket indicates, that Spell filed his Rule 61 motion on November 16, 1998. Because this filing date falls after the September 1998 expiration of AEDPA's limitations period, the motion would appear to have no statutory tolling effect.

However, in its February 28, 2002 opinion denying Spell's Rule 61 motion, the Delaware Superior Court states "Spell . . . filed on September 4, 1997 a timely application for postconviction relief and for the appointment of counsel. Resident Judge Terry appointed counsel for Spell and present counsel was later substituted." *State v. Spell*, 2002 WL 316616, at \*1 (Del. Super. Ct. Feb. 28, 2002). Clearly, the Superior Court regarded the September 4, 1997 letter as initiating the post-conviction proceeding, even though Delaware Superior Court Rule 61(b) requires the movant to "use the form which shall be made available without charge by the prothonotary." Thus, I am faced with the unusual situation of figuring out whether statutory tolling started when Spell filed the letter on September 7, 1997, which was not filed on the "prescribed form" as required by Delaware Superior Court Criminal Rule 61(b) and which was not docketed as a Rule 61 motion, or when he filed a "proper" Rule 61 motion on November 16, 1998.

7

The Third Circuit Court of Appeals has specifically held that, in order to determine if an application for state post-conviction relief is properly filed, and therefore, that it triggers the statutory tolling provision of § 2244(d)(2), a federal habeas court must look to the state rules governing such filings. *Merritt v. Blaine*, 326 F.3d 157, 167 (3d Cir. 2003); *Fahy v. Horn*, 240 F.3d 239, 243-44 (3d Cir. 2001).    Pursuant to Delaware Superior Court Criminal Rule 61(c)(1):

> Noncomplying motion.  If a motion does not substantially comply with the requirements of subdivision (b) of this rule, the prothonotary shall return it to the movant, if a judge of the court so directs . . .

Interpreting Rule 61(b) as granting the Superior Court discretion to overlook technical noncompliance with that rule, the Delaware Supreme Court has held that the Superior Court is not required to return a noncomplying letter without ruling on its merits; rather, the court can exercise its discretion and reach the merits of post-conviction motion that is in the form of a letter. *Whitfield v. State*, 659 A.2d 229 (Table), 1994 WL 632536, at **1 (Del. Nov. 7, 1994).

In the instant situation, by explicitly stating that the post-conviction application was timely filed on September 4, 1997, and by acting as if the letter was a Rule 61 motion, the Superior Court implicitly found that the letter constituted a properly filed Rule 61 motion. I cannot conclude otherwise. *Cf. Merritt*, 326 F.3d at 168 (stating that "[o]nce the Pennsylvania Court has so decided [that Merritt's PCRA petition did not fit within any of the PCRA's statute of limitations exceptions], it would be undue interference for a federal district court to decide otherwise").  Therefore, I find that the relevant filing date for statutory tolling purposes is September 4, 1997 rather than November 16, 1998.

Using September 4, 1997 as the relevant filing date for Spell's Rule 61 motion, statutory tolling renders his petition timely filed. The motion tolled AEDPA's limitations period from September 4, 1997 through July 29, 2002, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. However, when Spell filed the Rule 61 motion on September 4, 1997, his judgment of conviction had not yet become final, meaning that none of AEDPA's limitations period had expired. Consequently, when the limitations period resumed on July 30, 2002, Spell still had the full one year in which to file his § 2254 petition, until July 30, 2003. In short, Spell's petition is timely.

The Petition is therefore ready for review.

## IV.   DISCUSSION

Spell's petition asserts five ineffective assistance of counsel claims: (1) defense counsel failed to thoroughly investigate his claim of self-defense; (2) counsel told Spell he would receive a 20 year sentence; (3) counsel told Spell there was a substantial chance he could receive the death penalty if convicted of first degree murder; (4) counsel failed to advance a speedy trial claim; and (5) counsel failed to permit Spell to exercise his full right of allocution at sentencing. (D.I. 2.)

### A.   Exhaustion

Before seeking habeas relief from a federal court, a petitioner in custody pursuant to a state court judgment must exhaust all remedies available in the state courts. As stated in AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears
> that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State;
>    or
> (B) (i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process  ineffective to protect the
>    rights of the applicant.

28 U.S.C. § 2254(b)(1).  To satisfy this requirement, a petitioner must demonstrate that

the claim was fairly presented to the state's highest court, either on direct appeal or in a

post-conviction proceeding.  *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.

1997)(citations omitted);  *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D. Del. Dec.

22, 2000).  Fair presentation also requires the petitioner to raise the claim in a

procedural context in which the state courts can consider it on the merits.  *Castille v.*

*Peoples*, 489 U.S. 346, 351 (1989).

Here, Spell exhausted his ineffective assistance of counsel claims by presenting

them to the Delaware Superior Court in his Rule 61 motion, and then to the Delaware

Supreme Court in his post-conviction appeal.

### B.    Standard of Review

Pursuant to AEDPA, if a state court adjudicated the merits of federal habeas

claim, then the federal habeas court can only grant habeas relief if the state court's

adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds*, - U.S. - , 125 S.Ct. 2456 (2005).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. *Id.*; *Miller-El*, 537 U.S. at 341 (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

In the instant situation, the Delaware Superior Court addressed Spell's five ineffective assistance of counsel claims on the merits. The Delaware Supreme Court summarily affirmed the Superior Court's decision for the same reasons discussed by the Superior Court, which constitutes an adjudication on the merits. *See Rompilla*, 355 F. 3d at 247. Therefore, I must apply the deferential standard of review supplied by 28 U.S.C. § 2254(d)(1).

### C. Analysis Under § 2254(d)(1)

The clearly established federal law governing ineffective assistance of counsel claims is the standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). To prevail on a claim of ineffective assistance of counsel where the petitioner entered a plea, the petitioner must demonstrate both that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance actually prejudiced the petitioner's case; in other words, there is a reasonable probability that, but for counsel's faulty performance, the petitioner would not have pled guilty and he would have insisted on going to trial. *Strickland*, 466 U.S. at 687-88, 692-94; *Hill v. Lockhart*, 474 U.S. 52, 57-9 (1985)*; Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002); *Weeks v. Snyder*, 219 F.3d 245, 257 (3d Cir. 2000).

Here, the Delaware courts correctly identified *Strickland* as the proper standard and analyzed Spell's claims within its framework. As such, their decisions are not contrary to clearly established Federal law. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

I must also determine if the state courts unreasonably applied *Strickland* in denying Spell's claims. *See* 28 U.S.C. § 2254(d)(1). I will address each ineffective assistance of counsel claim separately.

12

a. Failure to thoroughly investigate self-defense claim

In investigating the circumstances of Spell's assault on Myhand, the Delaware State Police questioned a total of seven individuals, but only two of them actually witnessed at least some of the altercation. (D.I. 12, App. to State's Ans. Br. in *Spell v. State*, No. 143,2002, at B-19 to B-20.) The first witness, Maurice T. Hall, stated he saw Spell enter his room. Spell yelled at Myhand to get out, but Spell was standing between Myhand and the door. Hall stated he saw Spell punch Myhand in the chest, but did not see any weapon. Then, when Myhand ran out of the room, Spell chased him and stuck Myhand in the shoulder area "and at that point [Hall] saw what he described as a screwdriver." (D.I. 12, App. to State's Ans. Br. in *Spell v. State*, No. 143, 2002, at B-21.)

The second witness, Valvetta Frazier, said that Myhand was already in the room when Spell entered it. Spell told Myhand to "get the fuck out of here, you got Aids, I'm gonna kill you," and struck Myhand. Frazier did not realize at that time that Spell had an object in his hand and thought Spell just punched Myhand. Myhand ran out of the room, Spell chased him, and Spell then stabbed Myhand in the shoulder. Frazier saw Spell pull a long object out of Myhand. *Id.* at B-23.

Mr. Hillis was Spell's original attorney. As recited during the Rule 61 hearing, his notes stated that "[d]efendant adamantly maintains that there were no witnesses and the first person on the scene who could potentially be a witness was Maurice Blank. Maurice, per defendant, arrived minutes after the stabbing." *Id.* at B-87 to B-88. During the Rule 61 hearing, Mr. Schmid, Spell's "new" attorney, testified that Spell had never

13

indicated to him that anyone saw the initial scuffle in the room.   *Id*. at B-87.   Mr.

Schmid also testified that, "under all the circumstances, I believed that it would be

difficult to prevail on a straight theory of self-defense, and what I was doing in July of

that year was advising him that I wanted to proceed on the basis of manslaughter and

rely on the peculiar circumstances of the this case, the concern over Aids, the

uncertainty that Mr. [Spell] had from having been told [at the] hospital that they couldn't

tell him whether he had Aids or not, the long period of time waiting."   *Id*.   at B-89. Mr.

Schmid stated that his preference would have been to present an "extreme emotional

distress" defense had they gone to trial. *Id*. at B-90.

None of the individuals questioned by the police stated that Myhand was armed

or threatened Spell.  In fact, the only evidence that Myhand was armed or that he

threatened or assaulted Spell in any way prior to Spell's assault was provided by Spell

himself.  During the Rule 61 hearing, Spell testified as follows:

> A:  When I walked in the room I asked [Myhand] what he was doing there.  He
> told me that it was just as much his room as it was mine, and I told him that the
> crew leader supposed to move you out before I got back.  Then one word led to
> another, he approached me with the knife, and I reached back on the water
> cooler where I had two water coolers sitting by my bed where I kept silverware,
> spoons, forks, and knives, and I grabbed a spoon handle.
>
> * * *
>
> Q:  Now, you say he approached you with a knife.  Did he try to cut you?
>
> A:  He swung at me.
>
> Q:  You didn't get cut did you?
>
> A:  No.
>
> * * *
>
> Q:  How did he swing it at you?

14

A: He swings it like that in with his arm, and I caught his arm.

Q: He tried to stab down and you blocked it?

A: I caught his arm.

Q: You picked up the spoon and stabbed him in the chest?

A: Yes.

Q: And you say you stabbed him a total of three times?

A: Yes.

Q: Didn't intend to kill him?

A: No, I did not.

* * *

Q: When you stabbed him in the chest you certainly knew that that could kill him; correct?

A: It wasn't the wound in the chest as far as I can remember. It wasn't the wound that would have killed him. And it wasn't - - it wasn't that deep because I barely touched him with the knife - - with the spoon.

* * *

Q: Where else did you stab him?

A: In his - - I think in his stomach and in his neck.

Q: And you certainly knew that a stab wound in the neck could be lethal; correct?

A: Yes, I do.

Q: And a stab wound in the stomach could be lethal; correct?

A: It could.

Q: Now, you claim that you did not chase him when he left the room. Is that what you are saying?

A: No, I did not.

15

Q: So your testimony is that all the stab wounds were inflicted right there in the room?

A: Right there in the room.

Q: Were other people watching this happen?

A: I have been told that there was at least one.

Q: Did you see anybody else there?

A: I didn't see anybody.

* * *

A: I don't recall seeing anybody there. I wasn't concentrating on anybody with the knife in front of me.

(D.I. 12, App. to State's Ans. Br. in *Spell v. State*, No. 143, 2002, at B-123 to B-

127.)

Viewing the record as a whole, I conclude that Spell has failed to demonstrate that counsel performed deficiently in their investigation of his self-defense claim. Aside from Spell's version of the facts, there simply is no indication that his assault of Myhand was an act of self-defense. All of the other evidence completely contradicts Spell's contention that Myhand attacked him first.

Spell has also failed to satisfy *Strickland*'s prejudice prong. When a petitioner alleges that counsel failed to investigate his case, prejudice is demonstrated by showing what a "proper" investigation would have produced and that the information would have ended in a different result. *U.S. v. Askew*, 88 F.3d 1065, 1073 (C.A.D.C. 1996); *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987). Spell does not indicate what type of additional investigation his counsel should have performed, nor does he identify any potential witnesses his counsel should have questioned.

16

Additionally, given the complete absence of any corroboration of Spell's self-defense story, there is no indication that further investigation would have ended in a different result. I therefore conclude that the Delaware courts did not unreasonably apply *Strickland* in denying this claim.

          b.      Counsels' promise of a maximum twenty year sentence

Spell contends that his counsel promised he would receive a maximum twenty year sentence if he pled guilty. Spell raised this same claim in his Rule 61 motion, and the state courts rejected it because there was no credible evidence that Spell's counsel made this promise.

It is well-settled that a defendant has the burden to prove all facts in support of his ineffective assistance of counsel claim. *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996). Here, the record disputes Spell's vague and conclusory allegation. The plea agreement specifically states "[d]efendant agrees and stipulates that he is eligible under 11 Del.c. 4214(a) for a discretionary life sentence." (D.I. 12, App. to State's Ans. Br. in *Spell v. State*, No. 143, 2002, at B-63.) Spell testified during his plea colloquy that he was not promised any particular sentence. *Id.* at B-65 to B-72. Spell also indicated on the Truth In Sentencing Guilty Plea Form that he was not promised any particular sentence. *Id.* at B-64. Therefore, the Delaware state court did not unreasonably apply *Strickland* in denying this factually baseless claim.

          c.      Counsels' advice regarding a possible death sentence

Spell asserts that his counsel provided ineffective assistance by telling him there was a substantial chance he would receive the death penalty. According to Spell, he

had a strong prospect of prevailing on a claim of self-defense. Once again, the
Delaware state courts concluded that the evidence did not support Spell's allegation.

After reviewing the record, I conclude that counsels' performance was not
constitutionally ineffective with respect to their advice regarding a potential death
sentence. An attorney has the duty to "make an independent examination of the facts,
circumstances, pleadings and laws involved and then to offer his informed opinion as to
what plea should be entered." *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948); *Brady
v. U.S.*, 397 U.S. 742, 756 (1970)("Often the decision to plead guilty is heavily
influenced by the defendants appraisal of the prosecution's case against him and by the
apparent likelihood of securing leniency should a guilty plea be offered and accepted").
Here, the State notified Spell's counsel that it intended to seek the death penalty. His
counsel had a duty to inform Spell of this fact. During the Rule 61 proceeding, Mr.
Schmid testified that he told Spell that it was not "overwhelmingly likely" a death
sentence would be imposed if he were convicted but that he should not lightly dismiss
the possibility that he could receive a death sentence.  Spell, however, testified that Mr.
Schmid told him "the likelihood of . . . getting the death penalty was probable." (D.I. 12,
App. to Appellant's Op. Br. in *Spell v. State*, No 143,2002, at A-113.) I am bound to
accept the Superior Court's determination that Mr. Schmid's testimony was more
credible than Spell's testimony. Thus, this claim does not warrant relief under §
2254(d)(1).

### d.   Failure to pursue a speedy trial claim

Spell alleges that counsel provided ineffective assistance by failing to move for a dismissal on speedy trial grounds.  Spell also contends that counsel provided ineffective assistance by requesting a continuance, presumably because the continuance added to the late trial date.

Spell's case was originally scheduled for trial on June 3, 1996.  On February 8, 1996, the State requested a continuance because a number of the State's witnesses were migrant laborers and would be in Florida during the month of June.  The State asked that the trial be scheduled in September 1996.  The court granted that request, and rescheduled jury selection and the trial until September 16, 1996.

The second continuance request was made by the defense on August 19, 1996. Spell's initial counsel, Mr. Hillis left the Public Defender's Office suddenly in the late summer of 1996.  Mr. Schmid and Mr. Baumeister replaced Mr. Hillis as Spell's counsel.  Although Mr. Schmid had previously been assigned to Spell's case as "second chair," Mr. Hillis had "the overwhelming responsibility and investment of time and understanding in [the] case."  (D.I. 12, App. to State's Ans. Br. in *Spell v. State*, No. 143, 2002, at B-115.)  In fact, Mr. Schmid had only visited Spell for the first time on July 29, 1996.  Defense counsel asked for the continuance because, in light of Mr. Hillis's abrupt departure, they needed additional time to prepare the case, and explore strategic, evidentiary, and witness issues. *Id*. at B-57, 117-122. The Superior Court held an office conference, granted the continuance, and re-scheduled the trial to July 21, 1997.

The Superior Court found that defense counsel's request for continuance was reasonable and appropriate under the circumstances. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)("The matter of continuance is traditionally within the discretion of the trial judge" and depends on the circumstances presented to judge). The record supports this finding. Therefore, this ineffectiveness allegation is meritless.

Further, with respect to Spell's claim that his counsel should have filed a motion for a speedy trial, he has failed to satisfy either *Strickland* prong. Spell wrote a letter to Mr. Schmid explicitly stating "I feel a continuance of my scheduled trial date is necessary." *Id*. at B-60. Counsel also felt a continuance was necessary, made the request, and obtained it. This decision was objectively reasonable. Having obtained a continuance at Spell's urging, it would not have been reasonable for counsel to then file a speedy trial motion.

Spell also cannot demonstrate he was prejudiced by counsels' failure to advance a speedy trial claim. The Supreme Court has held that a court must weigh four factors when determining whether a defendant's speedy trial rights have been violated: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). A defendant will be deemed to have waived a speedy trial claim to the extent the delay is attributable to him. Id.

Delaware courts follow the *Barker* balancing rule when analyzing a speedy trial claim. *See, e.g., Middlebrook v. State*, 802 A.2d 268 (Del. 2002). The record reflects that Spell never asserted his right to a speedy trial; in fact, he actually contributed to the

20

delay by asking his counsel to request a continuance. Therefore, the Superior Court may well have denied a speedy trial motion on waiver grounds.[2] *See, e.g., Bo'oze v. State*, 846 A.2d 237 (Table), 2004 WL 6911903, at **4 (Del. Mar. 25, 2004); *see also Spell*, 2002 WL 316616, at *4. An attorney's failure to file a meritless motion does not constitute ineffective assistance of counsel. Thus, the Delaware courts did not unreasonably apply *Strickland* in rejecting this claim.

### e.   Denial of Allocution

Spell's final claim is that his counsel denied him the right of allocution during his sentencing. The record reveals that Spell was given the right to address the sentencing court, and he did so for four pages of the sentencing transcript. (D.I. 12, App. to State's Ans. Br. in *Spell v State*, No. 143, 2002, at B-44 to B-48.) Spell also submitted a 30 page letter to the court, which the sentencing judge read into the record. Thus, this claim does not warrant relief under § 2254(d)(1).

## V.   CERTIFICATE OF APPEALABILITY

Finally, I must decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the

---

[2] Even if the Superior Court did not find such waiver, Spell still failed to satisfy the four *Barker* factors. Given his counsels' recent assignment to the case, and the transient witness population, both the reason for the delay and the length of the delay appear to be appropriate. Spell never asserted a speedy trial claim. And, finally, Spell never contended that any defense witness died or became unavailable because of the delay, or that he was otherwise prejudiced by the delay. *See Barker*, 407 U.S. at 532.

constitutional claims debatable or wrong."   28 U.S.C. § 2253(c)(2);   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

I conclude that Spell's habeas petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be unreasonable.   Thus, I will not issue a certificate of appealability.

## VI.   CONCLUSION

For the reasons stated, Spell's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied.   An appropriate Order shall issue.